UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
——————————————————————————

CANDY L. HICKMAN, on behalf of M.A.H.,

                        Plaintiff,

                V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                     Defendant.
——————————————————————————

**REPORT AND
RECOMMENDATION**

07-CV-1077
(NAM/VEB)

## I. INTRODUCTION

In August of 2004, Plaintiff Candy Hickman filed an application for Supplemental Security Income ("SSI") benefits under the Social Security Act on behalf of her daughter, M.H. ("Claimant").[1]  The application was denied by the Commissioner of Social Security in March of 2005.

Plaintiff, through her attorneys, Conboy, McKay, Bachman & Kendall, LLP, Peter Walton, Esq., of counsel, commenced this action on October 11, 2007, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's denial of SSI benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 31, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

—————————————————

[1]Claimant is a minor.  Thus, in accordance with Rule 5.2 (a) of the Federal Rules of Civil Procedure, she will be referred to as "Claimant" or by her initials in this Report and Recommendation.

For the reasons set forth below, this Court finds no reversible error and finds that substantial evidence supports the ALJ's decision.  Thus, the Court recommends that the decision of the Commissioner be affirmed.

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff is the mother of Claimant, a minor child.  On November 10, 2004, Plaintiff filed an application for SSI benefits on Claimant's behalf. (T at 66).[2]  Plaintiff asserts that Claimant is disabled due to a learning disorder and speech/language delays. (T at 59-61, 66, 81-84). The application was initially denied on March 31, 2005.  (T at 26).  Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on July 17, 2006, with ALJ Elizabeth Koennecke presiding.  (T at 182-97).  Plaintiff and Claimant appeared unrepresented by counsel.  (T at 182-83).

On August 8, 2006, the ALJ issued a written decision denying the application for SSI benefits.  (T at 11-25).   ALJ Koennecke's decision became the Commissioner's final decision on September 27, 2007, when the Appeals Council denied Plaintiff's request for review.  (T at 4-6).

Plaintiff, acting on Claimant's behalf, commenced this action on October 11, 2007. (Docket No. 1).  Plaintiff filed a supporting brief on January 28, 2008.  (Docket No. 9). The Commissioner filed a brief on May 14, 2008. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8)

2

District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir.1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982).

---

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and/or severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F.Supp.2d 479, 487-88 (E.D.N.Y.2003); *Ramos v. Barnhart*, 02 Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

4

The first step of the three-step test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C .F.R. § 416.924(b); *Kittles*, 245 F.Supp.2d at 488. If so, then both statutorily and by regulation, the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as marked or severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); *Kittles*, 245 F.Supp.2d at 488; *Ramos*, 2003 WL 21032012, at *7.

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). *Id.* Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles*, 245 F.Supp.2d at 488; *Ramos*, 2003 WL 21032012, at *7.

If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

**B.      Analysis**

**1.      Commissioner's Decision**

The ALJ noted that Claimant was born on July 26, 1995, and thus was a "school-age child" pursuant to 20 CFR § 416.926a(g)(2) on November 10, 2004, the date the application for benefits was filed. (T at 17).   The ALJ found that Claimant had not engaged in substantial gainful activity at any time relevant to the decision.  (T at 17).   He further determined that Claimant suffers from the following severe impairments pursuant to 20 CFR § 416.924 (c): a learning disorder and speech/language delays.  (T at 17).

However, the ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (the "Listings").  (T at 18-19).

In addition, the ALJ concluded that Claimant did not have an impairment or combination of impairments that functionally equals the Listings. (T at 19).  As to the six domains of function the ALJ determined that Claimant had: (1) less than marked limitation in acquiring and using information; (2) no limitation in attending and completing tasks; (3) no limitation in interacting and relating to others; (4) no limitation in moving about and manipulating objects; (5) no limitation in the ability to care for herself; and (6) no limitation with regard to health and physical well-being. (T at 20-25).

In light of the foregoing, the ALJ found that Claimant had not been disabled, as defined under the Act, since the date the application was filed.  As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  (T at 4-6).

6

**2.      Plaintiff's Claims**

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers four (4) principal arguments in support of her position.  First, she argues that the Commissioner failed to determine that Plaintiff is entitled to a presumptive finding of disability because her condition meets the standards set forth in Listing 112.05 of 20 CFR 404, Subpart P, Appendix 1.  Second, Plaintiff contends that the Commissioner failed to conclude that the impairment is functionally equivalent to a Listing.  Third, she asserts that the Commissioner failed to properly assess the credibility of the Claimant's mother.  Fourth and finally, the Commissioner should have remanded the claim for an ALJ to consider the additional medical evidence submitted to the Appeal Council.  This Court will address each argument in turn.

**a.      § 112.05 of the Listings**

Plaintiff contends that Claimant's impairments meet or equal the impairment identified in § 112.05, 20 C.F.R. Part 404, Subpart P, Appendix 1 (commonly referred to as "the Listings").  As discussed above, if a claimant suffers from an impairment or combination of impairments that meets or medically equals one of the impairments contained in the Listings, the claimant will be considered disabled.

To meet or medically equal the impairment set forth in § 112.05 (the Listing for Mental Retardation), the claimant's impairments must be "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning."  Further, in addition to satisfying this diagnostic description, the claimant must show that he or she meets one of the six subparts of the Listing (112.05A - 112.05F).  In this case, Plaintiff

7

argues that Claimant satisfies the criteria set forth in subparts 112.05A and 112.05E.

### i.    Subpart 112.05A

For children ages three (3) to eighteen (18), subpart 112.05A is satisfied when the claimant's medical records show at least two of the following: (i) marked impairment in age-appropriate cognitive/ communicative function, documented by medical findings; (ii) marked impairment in age-appropriate social functioning, documented by history and medical findings; (iii) marked impairment in age-appropriate personal functioning, documented by history and medical findings; (iv) marked difficulties in maintaining concentration, persistence, or pace.

The term "marked" means "more than moderate but less than extreme." *See* 20 CFR Part 404, Subpart P, Appendix 1, §112.00(C).  "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*

Plaintiff argues that Claimant's medical records document a marked impairment in age-appropriate communicative or communicative function.  She notes that Claimant's school psychologist, Vicky Kellner-Landers, reported her full scale IQ as seventy-six (76), which is indicative of borderline low intelligence. (T at 101).  Claimant was also held back in the first grade and had a history of academic difficulties. (T at 101, 103, 60-61).  In January 2005, Claimant's special education teacher (Larry Thompson) and third-grade teacher (Mary Louise Hunt) described Claimant as suffering from a learning disability with regard to mathematics and written expression. (T at 66).  Thompson and Hunt further opined that Claimant had a "serious problem" comprehending and doing math problems

and expressing ideas in written form. (T at 70).

A speech and language evaluation administered in February 2005 indicated that Claimant had "difficulties in the area of oral communication." (T at 129). Her Spoken Language Quotient, the "most comprehensive estimate of a person's overall ability," was noted to be "Poor, falling within the 5th percentile compared to children her same age." (T at 129).

The ALJ considered the record and concluded that "[t]he medical evidence does not show that her impairments meet or medically equal the criteria of listed impairments." (T at 19). This Court finds that the ALJ's decision in this regard was supported by substantial evidence. The evidence does indicate that Claimant has an impairment with regard to age-appropriate cognitive/communicative function. However, the ALJ's finding that the impairment was not "marked" is supported by substantial evidence.

Although Thompson and Hunt (Claimant's teachers) noted serious problems regarding written expression and math, they also found that Claimant had no problem comprehending oral instructions and only a "slight" problem reading and comprehending written material, understanding and participating in class discussions, learning new material, and recalling and applying previously learned material. (T at 70). The school psychologist's evaluation indicated that Claimant's reading and spelling abilities were in the "low average to average range." (T at 102). The psychologist also opined that Claimant's "test-taking behaviors and higher performance in reading suggest that these cognitive tests may underestimate her true ability." (T at 103).

Dr. Dennis M. Noia, a psychologist, performed a consultative psychiatric examination and noted that Claimant's expressive and receptive language skills were "adequate," her

thought processes were "coherent and goal directed," and her insight and judgment were "age appropriate." (T at 120-21).   Jacqueline Weir, a speech language pathologist, performed a non-examining review of the record, and concluded that Claimant had "less than marked" limitations with regard to communication. (T at 131).

The foregoing constitutes substantial evidence to support a finding that Claimant has less than marked limitations with respect to age-appropriate cognitive/communicative function.  Moreover, even if Plaintiff's limitations were marked in that area, to meet or equal the criteria for subpart, she would also have to demonstrate one additional marked limitation from the following: marked impairment in age-appropriate social functioning, documented by history and medical findings; marked impairment in age-appropriate personal functioning, documented by history and medical findings; or marked difficulties in maintaining concentration, persistence, or pace.

With respect to age-appropriate social functioning, Claimant's teachers noted no problems with her ability to interact and relate with others.  School records indicate that Claimant established and maintained friendships and "gets along well with peers and adults." (T at 61, 83).  Plaintiff testified that while Claimant has "low self-esteem," she "gets along" with adults and "children of her own age." (T at 195).  Plaintiff, through counsel, concedes that Claimant has no significant limitations with regard to personal functioning. (Docket No. 9, at p. 8).

Lastly, as to the ability to maintain concentration, persistence, or pace, Claimant's teachers noted no problems in terms of paying attention when spoken directly to, sustaining attention during play/sports activities, focusing long enough to finish assigned tasks or activities, and completing class/homework assignments.  (T at 71).  Although the teachers

10

noted "slight" problems with regard to completing work accurately without careless mistakes and working at a reasonable pace, they described Claimant as "independent and a good worker." (T at 71). Claimant's reading teacher noted that she "tries hard and stays on task." (T at 78).

Given the above, substantial evidence supports the conclusion that Plaintiff's limitations were not marked with respect to two or more of the criteria required to satisfy subpart 112.05A of the Listings.

### ii.    Subpart 112.05E

A claimant might also have impairments that meet or medically equal the impairment listed in § 112.05 of the Listings if he or she can satisfy the requirements of Subpart 112.05E. To satisfy this subpart, the claimant must have a "valid verbal, performance, or full scale IQ of 60 through 70" and at least one of the following: marked impairment in age-appropriate social functioning, marked impairment in age-appropriate personal functioning, or marked difficulties in maintaining concentration, persistence, or pace.

IQ testing performed in September 2003 indicated that Claimant had a full scale IQ of 76. (T at 101). Further testing in February 2005 revealed a score of 88. (T at 125). IQ testing in November 2005 indicated that Claimant's full scale IQ was 72. (T at 83). Plaintiff argues that Claimant can satisfy Subpart 112.05E notwithstanding the fact that her full scale IQ is slightly higher than the threshold figure set forth in the subpart. There is some case law support for this assertion. *See Prentice v. Apfel*, No. CIVA-96-CV-851, 1998 WL 166849, at *5 (N.D.N.Y. Apr. 8, 1998)(indicating that IQ score two points above limit required by subpart was not *per se* bar to equivalency finding); *Rivera v. Apfel*, No. 99-CIV-3945, 2000 WL 628724, at *4 (S.D.N.Y. May 15, 2000) ("Under Listing 112.05(E), a child

11

has the disability of mental retardation if his IQ is measured between 60 and 70 and he has a marked impairment in social functioning, personal functioning, or concentration. Because petitioner's IQ was measured as 71, only one point above the listed range, and it is difficult to measure IQ with precision, a finding that petitioner's disability is equivalent to that listed in 112.05(E) also seems likely.").

However, this Court need not reach this issue.  Even assuming *arguendo* that Claimant's IQ was sufficiently close to 70 to satisfy the threshold inquiry, she does not meet the additional requirements of subpart 112.05E.  As outlined above, substantial evidence supports the conclusion that Plaintiff's limitations were not marked with respect  to age-appropriate social functioning, age-appropriate personal functioning, or maintaining concentration, persistence, or pace.

Lastly, it bears noting that the ALJ's finding that "[t]he medical evidence does not show that [Claimant's] impairments meet or medically equal the criteria of listed impairments," (T at 19) was also supported by the review and analysis completed by K. Prowda, the State Agency review doctor.  Dr. Prowda likewise concluded that Claimant did not have an impairment that met or medically equaled a Listing.  (T at 132).

It is well-settled that an ALJ is entitled to rely upon the opinions of State agency medical and psychological consultants since they are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), 416.927(f) (2). Such reliance is particularly appropriate where, as here, the opinion of the State agency doctor is supported by the weight of the evidence of record. *See Diaz v. Shalala*, 59 F.3d 307, 31 n. 5 (2d Cir.1995); *Provost-Harvey v. Comm'r of Soc. Sec.*, No. 06-CV-1128, 2008 WL 697366, at *6 (N.D.N.Y.

12

Mar. 13, 2008) ("The evaluations of non-examining State agency medical and psychological consultants may constitute substantial evidence.") .

In sum, this Court finds no reversible error in the ALJ's conclusion that Claimant did not have an impairment that met or medically equaled a Listing.

### b.    Functional Equivalency

As outlined above, a claimant may be disabled even if his or her impairments do not meet or medically equal a Listing.  The ALJ must also determine whether the claimant's impairments are functionally equivalent to a Listing. *See* 20 C.F.R. § 416.926a(a).

Analysis of functionality is informed by consideration of how a claimant functions in six main areas, commonly referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8.

The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

 Functional equivalence is established if the claimant has an "extreme" limitation in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.

13

A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

Plaintiff concedes that Claimant does not suffer from marked limitations with respect to moving about and manipulating objects, caring for herself, or as to her health and well-being. (Docket No. 9, at p. 14). However, Plaintiff argues that Claimant suffers from marked limitations in terms of the following domains: acquiring and using information, attending and completing tasks, and interacting and relating with others.

### i.    Acquiring and Using Information

This domain considers the child's ability to acquire or learn information and how well the child uses the information she has learned. 20 C.F.R. § 416.926a(g). A school-age child (*i.e.* at least six, younger than twelve) should be able to read, write, perform math, and discuss history and science. The child should be able to demonstrate these skills both in academic situations and in daily living. 20 C.F.R. § 416.926a(g)(2)(iv).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she does not demonstrate understanding of words about space, size, or time; cannot rhyme words or the sounds in words; has difficulty recalling information learned in school the previous day; has difficulty solving mathematical problems; and/or talks in short, simple sentences and his difficulty

explaining what he or she means.  20 C.F.R. § 416.926a(g)(3).

Plaintiff asserts that Claimant's IQ testing, which yielded results in the borderline low intelligence range, indicates marked impairment with regard to her cognitive ability. (T at 83, 101, 125).  Plaintiff also cites to education records documenting her academic difficulties, particularly as to mathematics and written expression.  (T at 60-61, 66, 70, 81-83, 102).

The ALJ considered the record evidence and concluded that Claimant has a less than marked limitation as to this domain.  (T at 20). The ALJ's finding as to this issue is supported by substantial evidence.  Claimant attends school in an integrated classroom, with additional special instruction.  (T at 66, 69).  Although her teachers noted serious problems concerning math and written expression, they indicated that Claimant had no problem or only a slight problem comprehending oral instructions, reading and comprehending written material, understanding and participating in class discussions, learning new material, and recalling and applying previously learned material. (T at 70). Notably, they did not rate any of Claimant's activities as causing her a "very serious" problem.  (T at 70).

Educational testing suggested that while Claimant was below grade level in math, she was at or close to grade level in reading decoding, spelling, and reading. (T at 60-61).

Moreover, as noted above, Vicki Kellner-Landers, a school psychologist, indicated that Claimant's "test-taking behaviors and higher performance in reading suggest that these cognitive tests may underestimate her true ability." (T at 103).  Although Plaintiff testified regarding Claimant's learning difficulties, she also stated that Claimant enjoys reading about animals, keeps a journal, and has become a "very good writer."  (T at 191-93).

15

The record demonstrates that Claimant likely has some limitations in terms of her ability to acquire and use information, particularly with regard to mathematics. However, in light of the above, the Court finds that the ALJ's conclusion that the limitations were not "marked" was supported by substantial evidence.

### ii.    Attending and Completing Tasks

In this domain, the Commissioner considers the child's ability "to focus and maintain . . . attention," and how well she can "begin, carry through, and finish . . . activities, including the pace at which [she] perform[s] activities and the ease with which [she] change[s] them." 20 C.F.R. § 416.926a(h).

A school-age child is expected to focus attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. The child should be able to concentrate on details and not make careless mistakes in work (beyond what would be expected in other children of like age who do not have impairments). The child should be able to change activities or routines without distracting himself/herself or others, and stay on task and in place when appropriate. The child should be able to sustain attention well enough to participate in group sports, read independently, and complete family chores. The child should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. 20 C.F.R. §416.926a (h)(2)(iv).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she is easily startled, distracted, or overreactive to sounds, sights, movements, or touch; slow to focus on, or fail to complete

activities of interest; repeatedly becomes sidetracked from activities or frequently interrupts others; becomes easily frustrated and gives up on tasks; and requires extra supervision to remain engaged in an activity. 20 C.F.R. §416.926a (h)(3).

Plaintiff asserts that Claimant has marked limitations in this domain.  Specifically, Plaintiff notes that Claimant's IEP requires that her tests be given in a location with minimal distraction.  (T at 81).  Plaintiff testified that Claimant has "difficulty with working independently" and becomes "very frustrated with math." (T at 191, 193).

The ALJ concluded that Claimant had no limitation as to this domain.  (T at 22).  The ALJ's finding is supported by substantial evidence.  Claimant's teachers described her as "independent and a good worker." (T at 71).  They indicated that while Claimant had a "slight" problem completing work without careless mistakes and working at a reasonable pace, she had no problem paying attention when spoken to directly, sustaining attention during play/sports activities, focusing long enough to finish an activity or task, refocusing to task, carrying out single or multi-step instructions, waiting to take turns, changing from one activity to another, organizing her own things or school materials, completing class/homework assignments, or working without distracting herself or others.  (T at 71). Claimant's reading teacher stated that she "tried hard and stays on task." (T at 78).  Dr. Noia, the consultative examiner, noted that Claimant's attention and concentration were "intact," that she "recalled and understood instructions," and that her style of responding to questions was "deliberate, orderly, and self-correcting." (T at 121, 124).  As noted above, Plaintiff testified that Claimant enjoys reading (T at 191), an activity that certainly requires the reader to maintain attention in order to complete the task.

The record demonstrates that Claimant likely has some limitations in terms of her

ability to maintain attention and focus.  However, the Court finds that the ALJ's conclusion that the limitations were not "marked" was supported by substantial evidence.

### iii.    Interacting and Relating with Others

In this domain, the Commissioner considers the child's ability to "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i).

With regard to this domain, a school-age child is expected to develop lasting friendships with children his or her age, begin to understand how to work in groups to create projects and solve problems, have an increasing ability to understand another's point of view and to tolerate differences. A school-age child "should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." 20 C.F.R. § 416.926a(i)(2)(iv).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she does not reach out to be picked up and held by a caregiver, has no close friends, avoids or withdraws from people he or she knows, or is overly anxious or fearful of meeting new people or trying new experiences, has difficulty playing games or sports with rules, has difficulty communicating with others or in asking others for assistance, has difficulty speaking intelligibly or with adequate fluency.  20 C.F.R. §416.926a (i)(3).

Plaintiff notes that in 2004, Claimant was involved in an incident of inappropriate sexual behavior with another child.  (T at 104, 106, 110).  Educational testing also showed language development delays, suggesting difficulty communicating with others. (T at 82,

128).  Melissa Drake, a speech language pathologist, performed a consultative examination and noted below average sentence combining skills and very poor word ordering and speaking abilities. (T at 128).

The ALJ concluded that Claimant had no limitation in interacting and relating with others. (T at 22).  This finding is supported by substantial evidence in the record.

In educational records, Claimant was noted to be a "good girl," who "works hard" and "gets along well with peers and adults." (T at 83).  Her IEP indicated that she "had a number of friends that she interacts with both in the classroom and on the playground." (T at 61). The sexual incident appears to have been completely isolated and the case was closed after Claimant underwent a brief period of counseling and evaluation. (T at 117). Claimant's teachers reported no problems at all with regard to Claimant's ability to interact and relate with others.  (T at 72).  Dr. Noia found Claimant's "manner of relating, social skills, and overall presentation" to be "adequate." (T at 120).  Claimant testified that she likes to play outside and has friends.  (T at 188-89).  As noted above, Plaintiff testified that while Claimant has "low self-esteem," she "gets along" with adults and "children of her own age." (T at 195).

Concerning communication skills, Claimant's teachers noted no problems using language appropriate to the situation and listener, introducing and maintaining relevant and appropriate topics in conversation, taking turns in a conversation, and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation.  (T at 72).  Claimant's speech was consistently described as completely intelligible and examiners noted her ability to articulate thoughts and feelings. (T at 100, 120, 129).  As referenced above, Plaintiff testified that Claimant had been keeping a journal and was a

19

"very good writer."  (T at 193).

Given the above, the Court finds that the ALJ's determination regarding this domain was supported by substantial evidence.

In sum, the ALJ found that Claimant did not have an impairment or combination of impairments that functionally equaled the Listings.  In reaching this conclusion, the ALJ properly employed the correct legal standard and her ultimate decision was supported by substantial evidence.  Indeed, in addition to the evidence reviewed above, the ALJ's findings were also supported by State Agency Review Dr. Prowda, who concluded that Claimant had less than marked limitation as to acquiring and using information, no limitation with regard to attending and completing tasks, and less than marked limitation interacting and relating with others. (T at 134).

### c.    Assessment of Plaintiff's Credibility

Plaintiff, Claimant's mother, testified at the hearing before the ALJ.  Plaintiff argues that the ALJ improperly discounted her testimony regarding the intensity, persistence and limiting effects of Claimant's symptoms.

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses . . . ." *Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). The ALJ has the benefit of directly observing a witness's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. *See Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir.1999) (citing *Pascariello v. Heckler*, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); *see also Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir.1999).

Although the ALJ did not discuss her reasons for deciding not to fully credit Plaintiff's

testimony, a review of the entire decision and the underlying record provide ample support for the ALJ's ultimate conclusion that Claimant is not disabled within the meaning of the Act.  Indeed, as outlined above, Plaintiff's own testimony indicated that the extent of the limitations is not as extensive as alleged.  Accordingly, the Court finds no reversible error in the ALJ's evaluation of Plaintiff's credibility.

### d.    Additional Evidence

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); *see also* § 416.1470(b); *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); *see* § 416.1470(b).

"'Weight of the evidence' is defined as the balance or preponderance of evidence; the inclination of the greater amount of credible evidence to support one side of the issue rather than the other." *HALLEX: Hearings, Appeals and Litigation Manual I-3-3-4* (S.S.A.2009), available at http://www.ssa.gov/OP_Home/hallex/I-03/I-3-3-4.html.

Even if "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Perez*, 77 F.3d at 45. Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court. *Id.* at 45-46. The role of the district court is to review whether the Appeals Council's action was in conformity with these regulations. *See* 42 U.S.C. § 405(g) (sentence five).

21

In this case, Plaintiff argues that the Appeals Council erred by refusing to remand the case to the ALJ for further consideration of a Childhood Disability Evaluation Form completed in September 2006 by Leann Paige and Thelma Williams. Plaintiff does not indicate who Ms. Paige and Ms. Williams are or describe their qualifications, but it appears that they may be teachers.  Paige and Williams opined that Claimant suffered from a "marked" limitation as to acquiring and using information. (T at 178).  Further, they indicated that Claimant suffered from a "marked" limitation in terms of attending and completing tasks. (T at 178).

The Court finds no error in the Appeals Council's decision not to remand based upon this evidence.  The Paige/Williams finding as to Claimant's ability to attend to and complete tasks was contradicted by the notation following it, in which the evaluators indicated that Claimant is "*usually* very focused and attentive," with "*some* difficulty completing writing and math assignments." (T at 178)(emphasis added).  The finding as to Claimant's ability to acquire and use information was contradicted by the evidence outlined above in Section III (C)(2)(A).  Further, even if the ALJ found that Claimant's limitations in this domain were marked, that would not lead to a finding that her limitations were functionally equivalent to a Listing.  That type of finding would require marked or greater limitations in at least two (2) domains.  As such, the Appeals Council did not err by declining to remand the matter to the ALJ.

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision, including the objective evidence and supported

opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the evidence, and granted the witness testimony appropriate weight when rendering her decision that Plaintiff is not disabled. The Court finds no reversible error.  Because the Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   June 22, 2009

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

June 22, 2009

Victor E. Bianchini
United States Magistrate Judge