**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CANDY L. HICKMAN, on behalf of M.A.H.,**

                                        **Plaintiff,**

        **vs.**                                                    **7:07-CV-1077**
                                                                   **(NAM/VEB)**

**MICHAEL J. ASTRUE*,**
**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

Conboy, McKay, Bachman & Kendall, LLP      Peter L. Walton, Esq.
407 Sherman Street
Watertown, New York 13601
*Attorneys for Plaintiff*

Andrew T. Baxter                           Susan Reiss, Esq.
United States Attorney for                 Special Assistant U.S. Attorney
the Northern District of New York
P.O. Box 7198-
100 South Clinton Street
Syracuse, New York 13261-7198

        * On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of the Social
        Security Administration.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is
        automatically substituted for former Commissioner Joanne B. Barnhart as the defendant in
        this action.

**Norman A. Mordue, Chief U.S. District Judge:**

                    **MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

        Plaintiff Candy Hickman on behalf of her daughter M.A.H., brings the above-captioned

action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking review of the

Commissioner of Social Security's decision to deny her application for supplemental security

income ("SSI") on behalf of her daughter.

## II.    BACKGROUND

On November 10, 2004[1], an application for SSI was protectively filed on behalf of M.A.H. (T. 14).[2]   M.A.H. was 9 years old at the time of the application. (T. 59).  Plaintiff claimed that M.A.H. was disabled due to a learning disorder and speech/language delays. (T. 59-61).  On March 31, 2005, plaintiff's application was denied and plaintiff requested a hearing by an ALJ which was held on July 17, 2006. (T. 26, 182).  On August 8, 2006, the ALJ issued a decision denying plaintiff's claim for benefits. (T. 11-25).  The Appeals Council denied plaintiff's request for review on September 27, 2007, making the ALJ's decision the final determination of the Commissioner. (T. 4).  This action followed.

## III.    DISCUSSION

> An individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(I).  That definitional provision goes on to exclude from coverage any "individual under the age of 18 who engages in substantial gainful activity. . . ." 42 U.S.C. § 1382c(a)(3)(C)(ii).  The agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability.  20 C.F.R. § 416.924; *Kittles ex rel. Lawton v. Barnhart*, 245 F.Supp.2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v.*

---

[1] According to the ALJ, the application was filed on November 10, 2004.  However, the Report and Recommendation indicated that the filing date was "August of 2004".  (Dkt. No. 15).  The actual application is not part of the record herein.

[2] "(T.)" refers to pages of the Administrative Transcript, Dkt. No. 7.

*Barnhart*, 2003 WL 21032012, at *7 (S.D.N.Y. 2003).  The first step of the test, which bears

some similarity to the familiar, five-step analysis employed in adult disability cases, requires a

determination of whether the child has engaged in substantial gainful activity.  20 C.F.R. §

416.924(b); *Kittles*, 245 F. Supp.2d at 488.  If so, then both statutorily and by regulation the child

is ineligible for SSI benefits.  42 U.S.C. § 1382c(a)(3)(c)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, then the second step requires

examination of whether the child suffers from one or more medically determinable impairments

that, either singly or in combination, are severe – that is, which causes more than a minimal

functional limitation.  20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp.2d at 488; *Ramos*, 2003 WL

21032012, at *7.  If the existence of a severe impairment is discerned, the agency must next

determine whether it meets or equals a presumptively disabling condition identified in the listing

of impairments set forth by regulation, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  *Id.*

Equivalence to a Listing can be either medical or functional.  20 C.F.R. § 416.924(d); *Kittles*, 245

F.Supp.2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If an impairment is found to meet, or

qualify as medically or functionally equivalent to, a listed disability, and the twelve month

durational requirement is satisfied, the child will be deemed disabled.  20 C.F.R. § 416.924(d)(1);

*Ramos*, 2003 WL 21032012, at *8.

Under the Social Security Regulations (the "Regulations"), analysis of functionality is

performed by consideration of how a claimant functions in six areas which are denominated as

"domains," and described as "broad areas of functioning intended to capture all of what a child

can or cannot do."  20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. Those

prescribed domains include:

(I) [a]cquiring and using information;
(ii) [a]ttending and completing tasks;
(iii) [i]nteracting and relating with others;
(iv) [m]oving about and manipulating objects;
(v) [c]aring for [oneself]; and
(vii) [h]ealth and physical well-being.

20 C.F.R. § 416.926a(b)(1).  A finding of disability is warranted if a "marked" limitation, defined as when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," 20 C.F.R. § 416.926a(e)(2)(I), is found in two of the listed domains.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  Functional equivalence also exists in the event of a finding of an "extreme" limitation, meaning "more than marked," representing an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," and this rating is only "give[n] to the worst limitations".  20 C.F.R. § 416.926a(e)(3)(I); *see also Morgan v. Barnhart,* 2005 WL 925594, at *11 (S.D.N.Y. 2005).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence."  42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).  Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Using the three-step disability evaluation, the ALJ found at step one that M.A.H. has never engaged in any substantial gainful activity.  (T. 17).  At step two, the ALJ concluded that M.A.H. has severe impairments consisting of a learning disorder and speech/language delays. (T. 17).  At the third step of the analysis, the ALJ found that none of M.A.H.'s severe impairments

meet, medically equal, or functionally equal any of the listed, presumptively disabling conditions set forth in Appendix 1 of the Regulations.  (T. 18-19).  The ALJ evaluated M.A.H.'s functional abilities in the six domains established by 20 C.F.R. § 416.926a(b)(1) and found that M.A.H.'s limitations were "less than marked" with respect to acquiring and using information. (T. 20).  The ALJ found that M.A.H. had no limitation with regard to attending and completing tasks, interacting and relating with others, in her ability to move about and manipulate objects, her ability to care for herself, and no limitation in health and physical well-being.  (T. 20-25). Consequently, the ALJ concluded that M.A.H. was not disabled.  (T. 25).

This matter was referred to United States Magistrate Judge Victor E. Bianchini for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(d). Magistrate Judge Bianchini reported that: (1) substantial evidence supported the ALJ's decision that M.A.H.'s impairments did not meet or medically equal §§ 112.05A or 112.05E of the Listings; (2) substantial evidence supported the ALJ's decision that M.A.H.'s impairments did not functionally equal a listed impairment; (3) substantial evidence supported the ALJ's decision that plaintiff's testimony was not entirely credible; and (4) new evidence submitted to the Appeals Council provided no basis for disturbing the ALJ's decision.  (Dkt. No. 15).  Magistrate Judge Bianchini recommended that this Court enter judgment on the pleadings affirming the Commissioner's decision denying disability and dismissing plaintiff's claims. (Dkt. No. 15).

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court engages in a *de novo* review of any part of a Magistrate's Report and Recommendation to which a party specifically objects.  Failure to object timely to any portion of a Magistrate's Report and Recommendation operates as a waiver of further judicial review of those matters.  *See Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993);

*Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).  When a party reiterates her original arguments, the Court reviews the Report and Recommendation only for clear error.  *Barratt v. Joie*, 2002 WL 335014, at *1 (S.D.N.Y. 2002).

Plaintiff objects to the Magistrate's Report and Recommendation on four grounds:  (1) that the Magistrate Judge erroneously found that the Commissioner's conclusion that M.A.H. did not have an impairment that met the requirements of §§ 112.05A and 112.05E of the Listings was supported by substantial evidence; (2) that the Magistrate Judge erred in finding that the ALJ's conclusion that M.A.H.'s impairments were not functionally equivalent to a listing was supported by substantial evidence; (3) that the Magistrate Judge erred when he found no reversible error in the ALJ's evaluation of plaintiff's credibility; and (4) the Magistrate Judge erred when he found no error in the Appeals Council's decision not to remand the matter to the ALJ based upon new evidence.[3]  (Dkt. No. 16).

**A.    Listed Impairments**

By regulation, the Commissioner has set forth a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected.  20 C.F.R. Pt. 404, Subpt. P, App. 1; *Lusher ex rel. Justice v. Comm'r of Soc. Sec.*, 2008 WL 2242652, at *6 (N.D.N.Y. 2008).  For both adults and children, "if an applicant satisfied the

---

[3] Defendant briefly argues that plaintiff reiterates the same arguments that she previously raised in her initial brief before the Magistrate Judge. (Dkt. No. 18, p. 1).  When "parties make only frivolous, conclusive or general objections, the court reviews the report-recommendation for clear error."  *See Brown v. Peters*, 1997 WL 599355 at *2 (N.D.N.Y. 1997) (citing *Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan*, 806 F.Supp. 380, 382 (W.D.N.Y. 1992)) (instead of citing objections to specific portions of the proposed findings and recommendations, the defendant attempted to take a "second bite" and merely submitted a revised version of the same arguments presented to the Magistrate Judge).  The Court has reviewed plaintiff's initial brief and the objections to the Report and Recommendation and is satisfied that plaintiff provided specific objections to the proposed findings and recommendations.  Even assuming that plaintiff presented general objections and restated original arguments, the Court must still review the Report and Recommendation for clear error.  *See Salimini v. Astrue*, 2009 WL 1794741, at *1 (N.D.N.Y. 2009).

Listings, the applicant was presumed to be disabled, and did not have to prove 'whether he [or she] actually can perform his [or her] own prior work or other work.' " *Lusher*, 2008 WL 2242652, at *6 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 529-530 (1990)).

Plaintiff argues that M.A.H.'s impairments meet or equal the §§ 112.05A and 112.05E of the Listings.  (Dkt. No. 16, p. 2).  Accordingly, plaintiff claims that claimant is entitled to a legal presumption of disability.  Defendant contends that claimant has never been classified as mentally retarded and there is no evidence in the record that claimant has deficits in adaptive functioning.  (Dkt. No. 18, p. 3).

The Commissioner's determination as to whether the claimant's impairment meets or equals the Listings must reflect a comparison of the symptoms, signs, and laboratory findings about the impairment, including any functional limitations that result from the impairment, with the corresponding criteria shown for the listed impairment. 20 C.F.R. §§ 416.925, 416.926a; *see also Giles v. Chater*, 1996 WL 116188, at *5-6  (W.D.N.Y. 1996) (holding that the ALJ must provide some explanation of the claimant's impairments in regard to the specified listings).  Where the claimant's symptoms, as described by the medical evidence, appear to match those described in the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings.  *Booker v. Heckler*, 1984 WL 622, at *3 (S.D.N.Y. 1984).  Mere recitation of the medical evidence is insufficient unless the reports referred to contain substantiated conclusions concerning the Listings, and the ALJ expressly adopts the reasoning of those conclusions. *Id*.  The ALJ must  "build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review".  *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citations omitted).  A court "cannot . . . conduct a review that is both limited and

meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Morgan on Behalf of Morgan v. Chater*, 913 F.Supp.184, 188-189 (W.D.N.Y. 1996) (quoting *Ryan v. Heckler*, 762 F.2d 939, 941 (11th Cir. 1985)).

Listing 112.05 involves mental retardation which is, "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.05. To meet or equal Listing 112.05A, for children of claimant's age, claimant's condition must result in at least two of the following:

> a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

> b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

> c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

> d. Marked difficulties in maintaining concentration, persistence, or pace.

*See* 20 C.F.R. pt. 404, Subpt. P, App. 1 § 112.02B.

To meet the requirements of § 112.05E, a claimant must first have "[a] valid verbal,

performance, or full-scale IQ of 60 through 70." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §

112.05E.  Additionally, a claimant must satisfy the requirements listed in one of the following: §

112.02B(2)(b); § 112.02B(2)(c); or § 112.02B(2)(d).[4]  *See Williams v. Astrue*, 2008 WL 4755348,

at *12-13 (S.D.N.Y. 2008).

In this case, plaintiff argues that M.A.H. suffers from a "marked" limitation in the areas of

age-appropriate cognitive and communicative functioning, age-appropriate social functioning and

maintaining concentration, persistence or pace.[5]  (Dkt. No. 16, p. 5-6).

In the decision, the ALJ summarized plaintiff's records including:  (1) a psychological

assessment for the Carthage Central School District; (2) medical records; (3) school records; (4)

records from Mercy Center for Behavioral Health and Wellness; (5) a consultative evaluation by

Dr. Dennis M. Noia, Ph.D; (6) a speech evaluation by Melissa Drake, MS, CSS-SLP; and (7) a

report from Karen Prowda, M.D., an administration medical review physician. (T. 17-18).  The

ALJ provided a brief synopsis of the aforementioned records but did not assign any weight to any

opinions at this step of the evaluation.  The ALJ noted that according to the Carthage School

records, claimant had a full scale IQ of 76 and that claimant was diagnosed as speech and

language impaired and received special education services.  (T. 17).  The ALJ noted that claimant

was treated at Mercy Center after an instance of "sexual abuse". (T. 17).  The ALJ discussed Dr.

Noia's opinion that claimant was not "mentally impaired" and that her attention and concentration

were intact and that she was functioning in the low average range of intelligence. (T. 18).  The

ALJ also cited to Drake's Speech and Language evaluation which revealed that claimant's

---

[4] These sections are cited *supra*.

[5] Plaintiff concedes that claimant does not suffer from a marked limitation in her personal functioning.

communication skills were weak and M.A.H. required extra attention and assistance in an

academic setting. (T. 18).

The ALJ concluded:

> The child claimant has the following severe impairments: a Learning
> Disorder and Speech/Language Delays. (T.17).

> The child claimant does not have an impairment or combination of
> impairments that meets or medically equals one of the listed
> impairments in 20 CFR Part 404, Subpart P, Appendix 1. (T. 18).

The ALJ specifically cited, as support for her conclusion, Dr. Karen Prowda's March 31,

2005 Childhood Disability Evaluation.  (T. 132).  The ALJ stated:

> On March 31, 2005, Dr. Prowda opined that the child's severe
> impairments did not meet or medically equal the criteria of any listed
> impairment.  No allegation has been made that the child's impairments
> are of listing level severity, only that they functionally equal it.  The
> medical evidence does not show that her impairments meet or
> medically equal the criteria of listed impairments. (T. 19).

The ALJ's decision does not address whether or not claimant has marked limitations in

any of the areas of functioning outlined in § 112.02B.  Moreover, the ALJ failed to discuss

whether or not claimant's impairments met the specific requirements of §§ 112.05A or 112.05E of

the Listings.  *See Williams*, 2008 WL 4755348, at *13 (holding that although there was no

"persuasive proof in the record", there was some evidence of limitation sufficient to warrant

further evidentiary proceedings).  Upon a review of the record, the Court finds that the ALJ made

conclusory findings and failed to apply the appropriate legal standard.  The Second Circuit has

held that, "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal

principles, application of the substantial evidence standard to uphold a finding of no disability

creates an unacceptable risk that a claimant will be deprived of the right to have her disability

determination made according to legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.

1987).  The ALJ should have provided some explanation as to why claimant's  impairments do

not meet the criteria of the specified listings and should have discussed the applicable paragraphs

of § 112.02B.  Although plaintiff did not expressly claim that M.A.H. satisfied Listings 112.05A

and 112.05E, plaintiff was proceeding *pro se* and given the non-adversarial nature of the

proceedings, the ALJ was obligated to consider all impairments.  *See Pimentel v. Barnhart*, 2006

WL 2013015, at *11, n. 7 (S.D.N.Y. 2006).

     The ALJ's failure to explain her conclusion is plain error.  *See Morgan*, 913 F.Supp. at

188-189 (holding that a one-sentence denial is insufficient to support the determination,

especially in light of the evidence to the contrary).  The ALJ recited some of the evidence but

failed to provide an analysis of plaintiff's impairments sufficient to enable this Court to conclude

that the ALJ's finding is supported by substantial evidence.  The Court will not engage in a

discussion which is a task properly left to the Commissioner, however, given the similarities

between M.A.H's symptoms and the criteria of Listing § 112.05, the ALJ should have given some

explanation as to why the impairment(s) do(es) not meet the criteria.  Specifically, the ALJ failed

to adequately discuss the significance of a January 2006 IEP evaluation prepared by the

Subcommittee on Special Education.  The IEP evaluators concluded that claimant had a full scale

IQ of 72. (T. 81).  Further, the ALJ failed to address the fact that M.A.H. was continually

diagnosed with a "learning disability" and that M.A.H had speech and language impairments and

received special education services. (T. 62, 82, 129).  Moreover, there is evidence that M.A.H.

suffers from impairments in age-appropriate social functioning documented by claimant's arrest

in September 2004 for sodomy in the first degree and endangering the welfare of a child and

received therapy and counseling after claiming that she was sexually abused.  (T. 110, 194).   On remand, the ALJ should specifically address whether M.A.H.'s impairments meet §§ 112.05A and 112.05E of the Listings and further, should specifically address the factors listed in § 112.02B.

### C.    Functional Domains

A child's impairment functionally equals one in the Listings if she exhibits "marked" limitations in at least two or an "extreme" limitation in one of the six domains of childhood functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  *Scott v. Astrue*, 2009 WL 2929823, at *2 (W.D.N.Y. 2009) (citing 20 C.F.R. § 416.926a(b)(1) (i-iv); 20 C.F.R. § 416.926a(d)).   A child has a "marked" limitation in a domain when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  *Id*. (citing 20 C.F.R. § 416.926a(e)(2)).   A "marked limitation" is "more than moderate" but "less than extreme". *Satchell v. Astrue*,  2009 WL 2986386, at *8 (S.D.N.Y. 2009).

Plaintiff argues that the ALJ erred when she failed to find claimant's impairments functionally equivalent to a Listing.  Specifically, plaintiff claims that M.A.H. has marked limitations in three of the six domains - acquiring and using information, attending and completing tasks, and interacting and relating with others.  (Dkt. No. 16, p. 6).  Defendant argues that claimant may have some limitation in acquiring and using information but that the limitation is not marked and further, substantial evidence does not support plaintiff's claim that M.A.H. has a marked impairment in the remaining two domains. (Dkt. No. 18, p. 8-9).

### 1.    Acquiring and Using Information

A claimant of M.A.H.'s age:

> should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. 416.926(g)(2)(iv).  In assessing this domain, the ALJ must consider how well a child acquires or learns information, and how well she can use the information she has learned. *Edmond v. Barnhart*, 2006 WL 2769922, at *9 (W.D.N.Y. 2006).  In this regard, the Commissioner encourages the use of school records including non-medical evidence provided by a teacher, who works with a child on a daily basis and observes her in a social setting with peers as well as adults. *Id*. at *10 (holding that the ALJ erred by not considering the report of the claimant's teacher in making a determination on the domain of acquiring and using information) (citing *Matthews o/b/o Dixon v. Barnhart*, 339 F.Supp.2d 1286, 1290, n.8 (N.D. Ala. 2004)); *see also Jones ex rel. SA v. Astrue*, 2009 WL 1924763, at *6 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1513(d)(2)(e)).  Moreover, opinions and reports from a school psychologist and speech therapist can provide evidence to establish an impairment.  20 C.F.R. § 404.1513(d)(2); 20 C.F.R. § 404.1513(a)(2).

In this case, the ALJ found that M.A.H. has "less than a marked limitation" in this domain. (T. 20).  To support that conclusion, the ALJ cited to Dr. Prowda's March 31, 2005 opinion.  Dr. Prowda concluded that, "the child had a less than marked limitation in the domain of Acquiring

and Using Information".  The ALJ assigned "[g]reatest weight" to Dr. Prowda's assessment

because, "it was provided by a medical professional who had reviewed the evidence of record".

(T. 21).

  The Court has reviewed the record in its entirety and finds that substantial evidence does

not support the ALJ's conclusion.  In September 2003, Vicky Kellner-Landers, a school

psychologist, evaluated claimant and reported that claimant's full scale IQ was 76 which was

indicative of borderline low intelligence. (T. 99-103).  Ms. Kellner-Landers also noted that

claimant was held back in the first grade and recommended that M.A.H. continue to receive

speech services for language delays. (T. 103).

  In October 2004, the Subcommittee on Special Education met to review M.A.H's

educational program.  (T. 61).  M.A.H. was classified as Speech and Language Impaired. (T. 61).

At the time of the evaluation, M.A.H. was in third grade and received consultant teacher service

for 1 ½ hours daily and speech therapy twice on a 6 day cycle. (T. 61).  The Kaufman Education

Achievement Test showed that claimant was at a first grade level for math and second grade level

for spelling and reading. (T. 60-61).   The evaluators concluded that M.A.H. would benefit from

more instruction time within the classroom and further agreed to discontinue speech therapy. (T.

61).  However, the evaluators noted that M.A.H. was inconsistent with math and below grade

level.  (T. 61).  It was also agreed that M.A.H. would be classified as Learning Disabled. (T. 62).

  In January 2005, M.A.H.'s special education teacher, Larry Thompson, and her 3rd grade

teacher, Mary Hunt, completed a Teacher Questionnaire.  (T. 66-76).  At the time of the

evaluation, the teachers noted that claimant was at a first-grade level for math. (T. 66).  The

teachers concluded that claimant had a specific learning disability in the areas of math and written

expression. (T. 66).   In the area of acquiring and using information, the teachers noted that claimant needed "extra help with written expression and math word problems and multi-step problems". (T. 70).

In February 2005, Melissa Drake, a speech pathologist, evaluated M.A.H. at the request of the New York State Office of Temporary and Disability Assistance.  (T. 127).  Ms. Drake concluded that claimant's overall language skills were "poor" and that she had difficulties in the area of oral communication.  (T. 129).  M.A.H. attained "below average" scores on listening and semantics composites and her oral communication skills were weak. (T. 129).  Ms. Drake opined that this, "will negatively impact on her everyday interactions as well as on her academic progress.  She will require extra attention and assistance to succeed in an academic setting."  (T. 129).

In February 2005, Dennis M. Noia, Ph.D., a psychologist, examined claimant at the request of the agency.  (T. 121).  At the time of the examination, claimant was in a regular education classroom and had a special education teacher in the classroom to assist her.  (T. 119). In addition, claimant received speech therapy three times a week. (T. 119).  Dr. Noia found that the results of the examination were consistent with low average intellectual functioning and recommended that M.A.H. continue with her current educational placement. (T. 122).   In March 2005, Dr. Prowda completed a Childhood Disability Evaluation based upon a review claimant's records. (T. 132).  Dr. Prowda opined that plaintiff had a "less than marked" limitation in acquiring and using information and based her opinion on the report of Jacqueline M. Weir, MA, CCC-SLP.  (T. 131).  On March 7, 2005, Ms. Weir completed a form entitled "Electronic Request for Medical Advice". (T. 131).  Ms. Weir reviewed claimant's records and stated, "[p]ropose less

than marked D#1 communication, less than marked D#3 communication".[6]  (T. 134).

In January 2006, an IEP school evaluation was prepared by the Subcommittee on Special Education. (T. 83).  At that time, claimant's full scale IQ was 72. (T. 83).  The evaluators noted that claimant had speech and language impairments. (T. 82).  M.A.H. needed extra time to complete math concepts and that she needed directions to be simplified and explained. (T. 82).  The evaluators concluded that M.A.H. should continue to receive special education services and that her testing should be administered in a location with minimal distractions. (T. 83).

On September 19, 2006, plaintiff's teachers, Leann Paige and Thelma Williams, prepared a Childhood Disability Evaluation.[7]  (T. 176).  The teachers noted that claimant's WISC IV examination revealed a "verbal IQ of 77 and full scale IQ of 72". (T. 178).[8]  The teachers concluded that claimant has a marked limitation in the area of acquiring and using information. (T. 178).  The teachers opined that M.A.H., "often needs information and directions repeated and/or simplified.  She works with a special education consultant for 2 ½ hours each day." (T. 178).

Based upon the record, the Court finds that the ALJ failed to apply the proper legal standard.  The opinions of state agency physicians may constitute substantial evidence if they are consistent with the record as a whole.  *Leach ex. Rel. Murray v. Barnhart*, 2004 WL 99935, at *9 (S.D.N.Y. 2004).  In this matter, the record as a whole, does not support Dr. Prowda's assessment.  There is significant evidence from claimant's teachers and other education professionals that

---

[6] The record does not provide an explanation for "D # 1" or "D # 3".

[7] This evaluation was provided to the Appeals Council after the ALJ rendered the decision.  However, as discussed *infra*, the report is part of the record herein and should have been considered by the Appeals Council.

[8] WISC is an abbreviation for the Wechsler Intelligence Scale for Children. http://www.medilexicon.com (last visited November 9, 2009).

contradicts Dr. Prowda's opinions. Given this discrepancy, the ALJ improperly assigned "greatest weight" to Dr. Prowda's opinions. Moreover, despite the fact that the ALJ summarized the opinions of claimant's teachers, school psychologist, speech pathologist, the ALJ failed to explain what weight, if any, she assigned to those opinions. The regulations instruct ALJs to consider all relevant evidence in determining a child's functioning, including information from the child's teachers, though the weight to be assigned to that information should depend upon the extent of the teacher's contact with the child. *Oliveras ex rel. Gonzalez v. Astrue*, 2008 WL 2262618, at *7, n. 13 (S.D.N.Y. 2008) (citing 20 C.F.R. § 416.924a(a)). The ALJ provided no rationale for rejecting the opinions of claimant's classroom teachers, special education teachers and school psychologist in favor of the non-examining, consultative physician. *See Carballo ex rel. Cortes v. Apfel*, 34 F.Supp.2d 208, 218 (S.D.N.Y. 1999) (holding that the ALJ improperly did not give proper weight to the observations of from the claimant's teachers). Thus, the Court cannot conclude that the ALJ's determination that claimant has less than marked limitations in acquiring and using information is supported by substantial evidence.

### 2.   Attending and Completing Tasks

Plaintiff contends that the ALJ erred by failing to find that M.A.H. has a marked impairment in the domain of attending and completing tasks. (Dkt. No. 14, p. 19). The domain of attending and completing tasks gauges how well a child is able to focus and maintain attention. 20 C.F.R. § 416.926a(h). For children of M.A.H.'s age (ages 6 to 12), the regulations provide:

> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your

17

age who do not have impairments).  You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate.  You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores.  You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv).

Some examples of limited functioning include: (1) being "easily startled, distracted, or over reactive to sounds, sights, movements, or touch"; (2) "being slow to focus on, or fail to complete activities of interest"; (3) becoming repeatedly sidetracked from activities or frequently interrupting others; and (4) being easily frustrated and giving up on tasks.  *See* 20 C.F.R. § 416.926a(h)(3)(i)-(v); *see also Morgan*, 2005 WL 925594, at *13.

The ALJ found that the claimant had no limitation in attending and completing tasks. (T. 22).  The ALJ again relied upon Dr. Prowda's opinion and further noted, "[t]he mother said she had just spoken with the teacher who told her that if the child doesn't understand, she just sits and stares.  She gets extra time to complete homework, but can attend and concentrate".  (T. 22).

Based upon a review of the record, the Court finds that the ALJ erroneously assigned "greatest weight" to Dr. Prowda's opinion.  In the section of Dr. Prowda's evaluation form that involves this domain, the doctor checked the box for "no limitation" but failed to provide any narrative or explanation.  (T. 134).  "[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions".  20 C.F.R. § 404.1527.   As Dr. Prowda failed to offer any explanation for her opinion, the ALJ improperly assigned "greatest

18

weight" to her conclusions.

Moreover, Dr. Prowda's conclusion is not supported by the record as a whole. Mr. Thompson and Ms. Hunt reported that M.A.H. had problems functioning in this domain and stated, "[M.A.H.] is an independent and good worker; needs some help w/reading grade level material. Follows directions/rules well." (T. 71). The teachers also noted that claimant had a slight problem working at a reasonable pace and completing work accurately without careless mistakes. (T. 71). Ms. Paige and Ms. Williams concluded that M.A.H. has a marked limitation in the area of attending and completing tasks and stated that while M.A.H. is very focused and attentive, she has difficulty completing writing and math assignments. (T. 178). Moreover, as noted *supra*, the record contains evidence that M.A.H. needs extra time to complete math concepts, needs directions to be simplified and explained, has difficulty completing writing and math assignments and must have her testing administered in a location with minimal distractions. Accordingly, the Court cannot conclude that the ALJ's determination that M.A.H. suffers from "no limitation" in this domain is supported by substantial evidence.

### 3.    Interacting and Relating to Others

The domain of interacting and relating with others considers how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). For school-age children of M.A.H.'s age, the Regulations further provide:

> When you enter school, you should be able to develop more lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to

19

> understand another's point of view and to tolerate differences.
> You should be well able to talk to people of all ages, to share
> ideas, tell stories, and to speak in a manner that both familiar
> and unfamiliar listeners readily understand.

20 C.F.R. § 416.926a(i)(2)(iv).

In this case, the ALJ concluded that the claimant has no limitation in interacting and

relating with others. (T. 22).  The ALJ noted that:

> Dr. Prowda advised that the child had a less than marked limitation in
> the domain of Interacting and Relating with Others, citing the report
> of the Speech/Language Pathologist on March 7, 2005 where the
> child's ability to communicate was indicated to likely have an adverse
> effect on her ability in this area.  (T. 22).  However, the child's speech
> is clear and easily understood.  The child does get along, socially and
> has some friends.  Additionally, her teacher identified no limitations
> in this area.   Therefore, this evidence outweighs the medical
> assessment that relies on a finding that her speech was "likely" to have
> an effect on this domain rather than actually having an effect.

In the ALJ's analysis of the previous domains, the ALJ assigned "greatest evidentiary

weight" to Dr. Prowda's assessments and rejected, without explanation, the assessments of

claimant's teachers.  However, in the context of the domain of interacting and relating with

others, the ALJ inexplicably rejected  Dr. Prowda's opinion and seemingly affords greater weight

to M.A.H.'s teacher's opinions.  The ALJ failed to provide any explanation for this inconsistency.

*See Nix v. Astrue*, 2009 WL 3429616, at *6 (W.D.N.Y. 2009) (holding that it is a fundamental

tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion

that support his determination) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th

Cir.2004)).  In addition to the erroneous selective analysis, the Court finds that the ALJ's

conclusion is not supported by substantial evidence.  On September 8, 2004, claimant was

admitted to Mercy Center for Behavioral Health and Wellness after being arrested and charged

with sodomy in the first degree and endangering the welfare of a child. (T. 104).  Plaintiff found

claimant in bed with another 9 year old engaging in "sex play/act". (T. 104). Claimant was

evaluated by Vanessa Gary, M.S.W.  Plaintiff advised Ms. Gary that claimant may have been

sexually abused by a babysitter at her father's home. (T. 110).  Claimant received counseling and

therapy at Mercy until October 2004.  Claimant's therapy focused on "working through the issue

of sexual abuse with consequential understanding and control of feelings and behavior".  (T. 115).

The ALJ summarized these records in the decision but failed to apply any weight to the opinions

of claimant's therapist and failed to explain why these records did not support plaintiff's claim

that M.A.H. had a marked limitation in this domain.  *See Adams ex rel. Williams v. Barnhart*,

2003 WL 102824, at *12 (S.D.N.Y. 2003) (finding that the ALJ overlooked evidence of "odd

sexual behavior towards [claimant's] peers" and that such behavior warrants a finding of a

"marked" limitation).  Consequently, the Court finds that the ALJ's decision on this point is

legally deficient and not supported by substantial evidence.

On remand, the ALJ must re-evaluate claimant's functional equivalence in the following

domains: acquiring and using information, attending and completing tasks and interacting and

relating with others.

**D.      Credibility**

Plaintiff argues that the ALJ improperly discounted her testimony and did not articulate

reasons for failing to fully credit plaintiff's testimony. (Dkt. No. 16, p. 14).  SSR 96-7p requires

ALJs to articulate the reasons behind credibility evaluations:

> The reasons for the credibility finding must be grounded in the
> evidence and articulated in the determination or decision. It is not
> sufficient to make a conclusory statement that "the individual's
> allegations have been considered" or that "the allegations are (or are

> not) credible." ... The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

1996 WL 374186, at *4 (S.S.A. July 2, 1996).

As a fact finder, the ALJ is free to accept or reject testimony of a claimant's parent. *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988). A finding that a witness is not credible must be set forth with sufficient specificity to permit intelligible review of the record. *Id*. (citing *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 648 (2d Cir. 1983). If the child claimant is unable adequately to describe his symptoms, the ALJ must accept the description provided by testimony of the person most familiar with the child's condition, such as a parent. *Jefferson v. Barnhart*, 64 Fed.Appx. 136, 140 (10th Cir. 2003). In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying. *Id*. (citation omitted) (holding that the finding that the mother's testimony was, "credible only to the extent that [it was] supported by evidence of record" is "standard boilerplate language" and an insufficient explanation of credibility).

Where a significant portion of the record supports the testimony, the ALJ must explain why he has determined that the testimony is not credible. *Smith v. Barnhart*, 157 Fed.Appx. 57, 62 (10th Cir. 2005); *see also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (ALJ's conclusion that the mother's testimony was, "unconvincing, not substantiated by objective medical findings, and credible only to the extent that claimant's impairments have not produced marked and severe limitations" was insufficient as significant probative evidence supported testimony).

In this case, the ALJ determined that:

> After considering the evidence of record, the undersigned finds that the child claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the statements by the mother concerning the intensity, persistence and limiting effects of the child's symptoms are not entirely credible. (T. 20).

Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ did not provide sufficient rationale for questioning plaintiff's credibility.  Of note, plaintiff testified that claimant has difficulty working independently, has a "real bad time" with math, has a low self esteem and gets extra time with her homework .  A review of the record reveals that there is some evidence to support plaintiff's testimony.  The ALJ failed to explain the weight she afforded to plaintiff's statements and failed to cite to any evidence in the record that contradicted any portion of plaintiff's testimony.  *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 788 (7th Cir. 2003) (holding that the ALJ's determination of the mother's credibility lacked any explanation that would allow the court to understand the weight given to the statements or the reasons for that weight as required by SSR 96-7p).  As a result, the Court remands this case for a determination of plaintiff's credibility which must contain specific findings that are closely and affirmatively linked to substantial evidence and "not just a conclusion in the guise of findings".  *See cf. Miller ex rel. Thompson v. Barnhart*, 205 Fed.Appx. 677, 681 (10th Cir. 2006) (the ALJ properly discussed the testimony, identifying particular examples of statements that were contradicted by other evidence in the record).

**E.     New Evidence**

Plaintiff argues that the Appeals Council should have remanded this matter to the ALJ based upon the submission of new evidence.  Defendant does not object to the Court's

consideration of the new evidence, but argues that the Appeals Council did not err when it

declined to review the case based on the additional evidence. (Dkt. No., p. 15).

The Appeals Council shall consider evidence that is "new and material and relates to the

period on or before the ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996) (citing 20

C.F.R. §§ 404.970(b) and 416.1470(b)).  The Appeals Council "will then review the case if it

finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence

currently of record." *Florek v. Comm'r of Soc. Sec.*, 2009 WL 3486643, at *11 (N.D.N.Y. 2009)

(citing 20 C.F.R. §§ 404.970(b); 416.1470(b)).  "Weight of the evidence" is defined as the

balance or preponderance of evidence; the inclination of the greater amount of credible evidence

to support one side of the issue rather than the other." *Id.* (citing HALLEX*: Hearings, Appeals

and Litigation Manual* I-3-3-4 (S.S.A.2009) *available at* http:// www.ssa.gov /OP_Home/hallex/I-

03/I-3-3-4.html.  Even if the Appeals Council denies review, evidence submitted to the Appeals

Council following the ALJ's decision becomes part of the administrative record to be considered

on judicial review. *Perez*, 77 F.3d at 45.  The role of the district court is to determine if the

Appeals Council erred when it determined that the new evidence was insufficient to trigger

review of the ALJ's decision. *Woodford v. Apfel*, 93 F.Supp.2d 521, 528 (S.D.N.Y. 2008).

Following the ALJ's decision, plaintiff submitted new evidence to the Appeals Council

for consideration. (T. 175).  This evidence consisted of a Childhood Disability Evaluation

provided by Leann Paige and Thelma Williams, claimant's teachers. (T. 176).  In the evaluation,

the teachers state that M.A.H. has a full scale IQ of 72 (which is in the 3rd percentile) and further

note that claimant needs information and directions repeated and/or simplified.  (T. 178). The

teachers state that M.A.H. has difficulty completing writing and math assignments and opine that

M.A.H. suffers from "marked limitations" in the domains of acquiring and using information and attending and completing tasks.  (T. 178).  Although the Appeals Council denied review of the ALJ's decision, it acknowledged receipt of the additional evidence and, "found that this information does not provide a basis for changing the [ALJ's] decision".  (T. 5).   Upon a review of the record and in light of the new evidence, the Court finds that the ALJ's conclusion that claimant suffers from "less than marked limitation" in the area of acquiring and using information and from "no limitation" is attending and completing tasks is not supported by the weight of the evidence. *See Morse v. Astrue*, 2009 WL 1322301, at *4-5 (N.D.N.Y. 2009).  Proper weight must be given to individuals, such as teachers, who have had significant contact with the claimant/child. *See Quinones on Behalf of Quinones v. Chater*, 117 F.3d 29, 35 (2d Cir. 1997). Therefore, the Appeals Council erred in failing to review the ALJ's decision.

## IV.   CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED** that the Report and Recommendation of Magistrate Judge Victor E. Bianchini is **REJECTED**; and it is further

**ORDERED** that the Commissioner's determination is **REVERSED**; and it is further

**ORDERED** that this action is **REMANDED** to the Commissioner for further proceedings; and it is further

**ORDERED** that pursuant to Local Rule 72.3, the parties are advised that the referral to a Magistrate Judge has been **RESCINDED**, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit.

**IT IS SO ORDERED.**

Date:  July 27, 2010

Norman A. Mordue
Chief United States District Court Judge